**Artie A. HAMBERLIN and Shirley Hamberlin, husband and wife, Plaintiffs,**

v.

**VIP INSURANCE TRUST, Galbraith & Green, Inc. of Arizona, an Arizona Corporation, C. Bruce Chambers, Wayne D. Crismon and Stephen C. Dana, Defendants.**

Civ. No. 77–469 Phx. WPC.

United States District Court, D. Arizona.

Aug. 5, 1977.

---

5. *Ellsberg v. Mitchell,* C.A. 1879–72 (D.D.C.); *Lake v. Ehrlichman,* C.A. 74–887 (D.D.C.); *Smith v. Nixon,* C.A. 76–798 (D.D.C.).

Richard B. Burnham, Jennings, Strouss & Salmon, Phoenix, Ariz., for plaintiffs.

Robert H. Green, Robbins, Green, O'Grady & Abbuhl, Phoenix, Ariz., for defendants.

J. Michael Low, Asst. Atty. Gen., State of Ariz., Phoenix, Ariz., for State of Arizona, amicus curiae.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

Plaintiffs, beneficiaries of a group health and accident policy, have filed suit against defendants for alleged violations of the Federal Employee Retirement Income Act (hereinafter ERISA or the Act), 29 U.S.C. § 1001 (1974) et seq. Plaintiffs claim and defendants also urge that the defendant VIP Insurance Trust is an ERISA plan. Plaintiffs assert that this Court therefore has exclusive jurisdiction (preemption), concurrent jurisdiction, or federal question jurisdiction.[1] Defendants move to dismiss even though contending this is a benefit plan covered by ERISA, claiming it is a simple contract action that should be tried in state court. The State of Arizona through the State Insurance Director has, with the permission of the Court, filed an extensive brief arguing that state control over defendants has not been preempted and that VIP does not qualify as an ERISA plan in any event and therefore this court is without subject matter jurisdiction.

Amicus has also filed a state court complaint against VIP seeking to be appointed receiver with the right to proceed against all defendants herein for the protection and benefit of plaintiffs and others similarly situated whose continuing claims and benefits for illness or injury originally suffered during coverage have been terminated by the trustee's unilateral termination of the VIP trust as financially unsound. An Order to Show Cause is scheduled in the state court action.

The first issue to be decided is whether subject-matter jurisdiction exists in this court. That depends upon whether or not the VIP trust was or is an ERISA plan covered by the Act. If not, there is no jurisdiction in this court, and there is therefore no pendent jurisdiction as to the purely state claims. *Hodge v. Mountain States,* 555 F.2d 254, 9th Cir. 1977. Diversity is lacking. The party seeking to invoke the jurisdiction of this court has the burden of establishing that jurisdiction exists. *Data Disc, Inc. v. Systems Technology Assoc.,* 557 F.2d 1280, 9th Cir. 1977. If the defendant trust is not covered by the Act the questions of exclusive, concurrent or federal question jurisdiction and federal preemption need not be addressed.

The Court has had the benefit of voluminous pleadings and memoranda and two days of testimony have been heard on

1. 29 U.S.C. § 1132.

the question of jurisdiction and plaintiffs' request for a preliminary injunction. The facts necessary for determination of the jurisdiction question are sufficient and un-contested in any material respect.

The original VIP trust was a multiple employer trust insured by Old Republic Life Insurance Company and provided for extended benefits. When Old Republic notified that trust that it was cancelling the group coverage, defendants Galbraith & Green (insurance brokers), as opposed to placing the business with another authorized insurer, established a new self-funded trust providing similar coverage but without extended benefits and with itself acting as administrator for a 15% commission.

Galbraith & Green caused the trust to be established under the belief that if the trust in form [2] complied with the Act, it would be exempt from control and supervision by the State Department of Insurance. The Agreement and Declaration of Trust was entered into between "Viable Insurance Plans a [sic] Association" and four high officials of Galbraith & Green. No such association existed. The trustees, defendants Chambers, Dana and Crismon together with David K. Stewart signed the trust agreement as trustees over their Galbraith & Green, Inc. titles, i. e., President, Marketing Vice-President, Senior Vice-President and Asst. Vice-President, respectively. Thereafter in their capacity as trustees they negotiated with themselves in their capacity as corporate officers an Administration and Management Contract with Galbraith & Green, Inc. That contract was not offered as an exhibit herein. The trust agreement and management contract were prepared under the guidance of and by Galbraith & Green attorneys. It is clear that in the establishment of the trust no one was acting as an agent of any employer individually or as a group or association but instead, solely in the interest of Galbraith & Green, insurance brokers.

Reinsurance agreements for excess coverage were entered into with two bona fide insurance companies. The Galbraith firm also received another 20% commission from one of the insurance carriers attributable to the life premiums paid in on the group life policy.

Thereafter Galbraith & Green vigorously sought the endorsement of the welfare benefit plan provided by the VIP trust from various disparate and unrelated employers and employer groups. Though such endorsements they promoted and sold the policies directly to individual employees who paid the entire premiums on their individual insurance policies.

The employers had no voice in the management or operation of the trust or the decision to terminate, and contributed no funds on behalf of their employees. The trustees were corporate officers of Galbraith & Green and in the operation, maintenance and ultimate termination of the plan were acting in the best and primary interest of their corporate employer. They were simply not acting as agents of or on behalf of the employers or employer groups as contemplated by 29 U.S.C. § 1002(5). They were acting in the interest of and on behalf of the business of Galbraith & Green, their employer.

This was purely an entrepreneurial plan put together by Galbraith & Green to protect business commissions they would have lost if the trust had not been restructured and continued after Old Republic cancelled. They also maintained business relations with customers they could have lost. Most importantly, by designating this an ERISA plan, they hoped to escape from direct supervision and auditing by the State Insurance Department and from its coverage and reserve requirements under the theory of federal preemption.

There has been substantial national concern over the increase in the numbers of uninsured multiple employer trusts such as this which have avoided state supervision and have failed, leaving sick or injured em-

2. *See* 29 C.F.R. § 2510.3–1(J).

ployees holding an empty bag. *See* Exhibit 3 to Amicus brief.[3]

While there have been some district court cases discussing the preemption problem, *e. g.* (complete preemption) *Azzaro v. Harnett,* 414 F.Supp. 473 (S.D.N.Y.1976); *Wayne Chemical v. Columbus Agency Service Corp.,* 426 F.Supp. 316 (N.D.Ind.1977); (no or limited preemption) *Dawson, et al., v. Whaland,* Civ. 76–266 (D. N.H. February 11, 1976); *Insurers Action Council v. Heaton,* 423 F.Supp. 921 (D.Minn.1976), the Court has neither found nor been cited to a case which has discussed the statutory coverage of an uninsured multiple employer trust formed and administered and sold as in the instant case.

However, the Court is persuaded that such an arrangement as this was not contemplated by Congress in legislation designed to insure that employees would be protected under employment retirement and welfare plans established or maintained by employers. 29 U.S.C. § 1002(1) and (5).

In recognition of the growing problems created by just such a plan as the VIP trust, the "Activity Report of the Committee on Education and Labor of the U. S. House of Representatives" No. 91,1785 dated January 3, 1977,[4] contains the following pertinent language. While not contemporaneous legislative history,[5] it is "virtually conclusive" as to legislative intent. *Sioux Tribe v. United States,* 316 U.S. 317, 329, 62 S.Ct. 1095, 86 L.Ed. 1501 (1942).

"It has come to our attention, through the good offices of the National Association of State Insurance Commissioners, that certain entrepreneurs have undertaken to market insurance products to employers and employees at large, claiming these products to be ERISA covered plans. For instance, persons whose primary interest is in profiting from the provision of administrative services are establishing insurance companies and related enterprises. The entrepreneur will then argue that his enterprise is an ERISA benefit plan which is protected, under ERISA's preemption provision, from state regulation. We are concerned with this type of development, but on the basis of the facts provided us, we are of the opinion that these programs are not 'employee benefit plans' as defined in Section 3(3). As described to us, these plans are established and *maintained* by entrepreneurs for the purpose of marketing insurance products or services to others. They are not established or maintained by the appropriate parties to confer ERISA jurisdiction, nor is the purpose for their establishment or maintenance appropriate to meet the jurisdictional prerequisites of the Act. *They are no more ERISA plans than is any other insurance policy sold to an employee benefit plan.*

\*    \*    \*    \*    \*    \*

"We are mindful of the potentially harmful effects of an overly broad interpretation of the term 'employee benefit plan' when coupled with the policy of section 514. As we have already noted, we do not believe that the statute and legislative history will support the inclusion of what amounts to commercial products within the umbrella of the definition. Where a 'plan' is, in effect, an entrepreneurial venture, it is outside the policy of section 514 for reasons we have already stated. In short, to be properly characterized as an ERISA employee benefit plan, a plan must satisfy the definitional requirement of section 3(3) in both form and *substance*." (Emphasis added)

---

3. A series of articles and editorials between the period 2/21/77–6/27/77 published in Business Insurance, a national magazine for buyers of employee, property and liability protection and financial services.

4. This report was mandated by the Act. 29 U.S.C. §§ 1221–1222.

5. Contemporaneous legislative history is found in Volume 3, U.S.Code Congressional and Administrative News 93rd Congress Second Session 1974 at pages 4639–5190. It is devoted entirely to the provisions of the pension and retirement provisions of the Act and gives no specific guidance as to health and welfare benefits plans formed and administered as here.

In the view of this Court, defendant VIP Insurance Trust does not qualify as an ERISA plan. While the case is not directly in point, the Court's conclusion finds some further support in *Insurers Action Council v. Heaton, supra,* wherein Judge Devitt wrote:

"IV. *Preemption by ERISA*

In their brief, plaintiffs argue that the portions of the Act relating to an employer's obligation to offer specified forms of group insurance to his employees is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* (Supp. V, 1975). Specifically, plaintiffs claim that since health and accident insurance is defined as an 'employee welfare benefit plan,' 29 U.S.C. § 1002(1)(A), (Supp. V, 1975), and 'employee welfare benefit plan' is included in the term 'employee benefit plan,' 29 U.S.C. § 1002(3) (Supp. V, 1975), the Act is preempted by 29 U.S.C. § 1144(a) (Supp. V, 1975) which provides that all state laws relating to employee benefit plans are superseded by ERISA. This argument has superficial appeal. However, closer examination reveals that plaintiffs have not shown a substantial probability that it has merit. In the first place, 29 U.S.C. § 1144(b)(2)(A) (Supp. V, 1975) provides that with a very narrow exception, ERISA should not be construed to relieve any person from any state law regulating insurance, banking or securities. Thus, the conflict between the challenged state insurance law and ERISA has to be very clear in order to trigger the preemption provision. The only substantive parts of ERISA which relate to health and accident insurance are the reporting and disclosure provisions. These requirements have nothing to do with the substance of the insurance plans which employers must offer their employees. Additionally, 29 U.S.C. § 1144(d) (Supp. V, 1975) provides that ERISA shall not be construed to supersede any law of the United States. The McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* (1970), mandates that the business of insurance shall be regulated by the states. In light of these statutory consid-

erations, the ultimate success of plaintiffs' preemption claim is questionable at best."

IT IS ORDERED:

The complaint and action are dismissed without prejudice for lack of subject-matter jurisdiction.