**NATIONAL ASSOCIATION OF POSTAL SUPERVISORS, Plaintiff–Appellant,**

**v.**

**The UNITED STATES, Defendant–Appellee.**

**No. 90–5160.**

United States Court of Appeals, Federal Circuit.

Sept. 11, 1991.

J. Kirk Wade, Patton, Boggs & Blow, Washington, D.C., argued for plaintiff-appellant. With him on the brief was Louise N. Howe and David C. Todd.

Bruce R. Ellisen, Dept. of Justice, Washington, D.C., argued for defendant-appellee. With him on the brief were Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen and Robert S. Pomerance, Attys.

Before ARCHER and LOURIE, Circuit Judges, and MILLER, Senior Circuit Judge.

JACK R. MILLER, Senior Circuit Judge.

The National Association of Postal Supervisors (NAPS) appeals a Claims Court judgment that it was not entitled to a refund of income taxes and interest paid the Internal Revenue Service (IRS) for the years 1983 and 1984.

Familiarity with the Claims Court's opinion is presumed. *National Ass'n of Postal Supervisors v. United States,* 21 Cl.Ct. 310 (1990). However, we are not persuaded that NAPS has shown that the Claims Court's findings of fact are erroneous, much less clearly erroneous, or that its conclusions of law are not sufficiently supported by the evidence.[1] We, therefore, affirm.

---

**1.** Rule 52(a) of the Rules of the United States  Claims Court provides, in pertinent part, that in

## BACKGROUND

NAPS is a tax-exempt labor organization that sponsors a health plan under the Federal Employees Health Benefits Program (FEHBP). When the health plan first took effect in 1980 active and retired postal supervisors were the only ones eligible for membership in NAPS under its constitution. In March 1980, however, NAPS amended its constitution to allow any federal employee to become a "limited benefit member for the sole purpose of obtaining [the health plan] upon the payment of annual dues of $25.00." Limited benefit members could not vote or hold office. On July 1, 1981, only 149 limited benefit members were enrolled in NAPS. Only 215 additional limited benefit members enrolled through June 1982. By July 1, 1983, however, limited benefit memberships increased to over 23,000. This pattern continued through July 1984, when limited benefit memberships reached almost 33,-000. In August 1984 (after the tax years in issue here), NAPS amended its constitution to provide that limited benefit members could attend meetings and conventions and serve on committees in an advisory capacity, and to provide that NAPS' purpose would include "widen[ing] the field of opportunity for those members who make the Postal Service or the Federal Government their life work." Previously, this clause had referred only to "members who make the post office their life work." NAPS made these changes because it was concerned that revenue from limited benefit member dues would be regarded by the IRS as taxable income. *National Ass'n of Postal Supervisors*, 21 Cl.Ct. at 314.

The IRS determined that NAPS' collection of membership dues in return for health insurance was a trade or business activity unrelated to the organization's tax-exempt purpose; that these dues generated taxable income in the 1983 and 1984 tax years. The IRS concluded that NAPS

owed $696,369.59 in additional tax and interest. NAPS paid this amount and filed a complaint in the United States Claims Court for a full refund, which the Claims Court denied.

## DISCUSSION

■ The Claims Court found that in 1980 NAPS' Executive Committee passed a resolution providing that limited benefit membership was for the *sole* purpose of obtaining insurance; further, that:

> the plain meaning of NAPS's 1980 constitution, the perceptions of the organization's key officers [e.g. Maurice Twomey, Executive Vice President of NAPS, and Donald Ledbetter, former President of NAPS], the dearth of services actually received by limited benefit members, and [a] 1984 constitutional change all indicate that limited benefit members were not really members of NAPS. Rather, limited benefit members simply paid $25.00 for the opportunity to obtain insurance under the NAPS health plan. NAPS therefore offered services and, in return, obtained gross receipts.

*National Ass'n of Postal Supervisors*, 21 Cl.Ct. at 321.

As pointed out above, in the years involved, non-postal federal employees became limited benefit members, but only for the purpose of obtaining insurance under the NAPS plan. In fiscal 1983 NAPS collected over $580,000.00 in limited benefit member "dues"; in fiscal 1984 these increased to $850,000.00. *Id.* at 313. As found by the Claims Court, limited benefit members are federal employees who have no interest in the Postal Service, so that providing insurance to them is not substantially related to NAPS' tax-exempt purpose.[2]

As to whether NAPS collected the $25 annual dues with an intention of making a

---

all actions tried upon the facts the court shall find the facts specially and state separately its conclusions of law thereon. Findings of fact shall not be set aside unless clearly erroneous. *Heisig v. United States,* 719 F.2d 1153 (Fed.Cir. 1983).

2. *See also American Postal Workers Union, AFL–CIO v. United States,* 925 F.2d 480 (D.C.Cir.1991) (Dues paid to tax-exempt postal workers union by non-postal workers to participate in health plan were unrelated business taxable income).

profit, the Claims Court observed that NAPS realized large profits from the $25 annual dues while incurring costs of less that $4 for each $25 received. *Id.* at 322. Accordingly, we are persuaded that NAPS' collection of dues from limited benefit members had a sufficient profit motive (and result) to make this activity a trade or business that yielded unrelated business taxable income under 26 U.S.C. §§ 511 through 513 (1982)[3] (I.R.C.).

The Claims Court found that "[l]imited benefit members in fact receive nothing but insurance for the membership fee," and concluded that "NAPS has not shown that performance of insurance services for limited benefit members and collection of $25.00 importantly advances the organization's purpose." *National Ass'n of Postal Supervisors,* 21 Cl.Ct. at 325–26. NAPS' provision of health insurance to its members, if made with an intent to improve their working conditions, is consistent with a union's § 501(c)(5) tax exempt purpose. *See* Rev.Rul. 62–17, 1962–1 C.B. 87. However, the provision of such insurance to non-members, or to employees of other agencies who are members in name only, is not related to NAPS' exempt purpose of securing the social and economic advancement of postal supervisors.

The Court of Appeals for the District of Columbia Circuit considered this same issue in *American Postal Workers Union, AFL–CIO v. United States,* 925 F.2d 480 (D.C.Cir.1991). Facing facts almost identical to those in the case before us, the court held that the Postal Workers Union (not associated with NAPS) was subject to tax on the $35.00 "dues" that non-postal employees paid to become "associate members," where the only benefit the associate members received was the opportunity to purchase health insurance. The court stated "we simply hold that provision of insurance benefits to persons who are not members in *any* other sense cannot be substantially related to a union's tax-exempt purposes." *Id.* at 483 (emphasis in original). The court went on to say

it appears that the provision of health insurance to non-postal workers relates to the union's tax-exempt purposes solely as a source of income, which is plainly not enough. *See* Treas.Reg. § 1.513–1(d)(1) ("substantially related (other than through the production of funds)").

*Id.* We agree with this reasoning. The activity of admitting limited benefit members for a fee advances NAPS' tax-exempt purpose only by providing an additional source of income.

■ If NAPS' receipt of membership dues in connection with the provision of health insurance to non-postal workers is to be subject to taxation, it must also constitute a "trade or business" within the meaning of 26 I.R.C. § 513(a) and Treas.Reg. § 1.513–1(d)(1). The Treasury regulations define trade or business as an activity "carried on for the production of income." Treas.Reg. § 1.513–1(b). Under this definition, we are satisfied that NAPS had the requisite profit motive when it charged federal employees $25.00 to become limited benefit members.

The District of Columbia Circuit recognized that "[t]here is no better objective measure of an organization's motive for conducting an activity than the ends it achieves." *American Postal Workers Union,* 925 F.2d at 484 (quoting *Carolinas Farm & Power Equip. Dealers v. United States,* 699 F.2d 167, 170 (4th Cir.1983)); *see also United States v. American Bar Endowment,* 477 U.S. 105, 110, 106 S.Ct. 2426, 2429, 91 L.Ed.2d 89 (1986). For the years in question, NAPS made a substantial profit from the limited benefit membership dues. The Claims Court found that in 1983 and 1984 each limited benefit member cost NAPS less than $4.00, while NAPS continued to collect $25.00. *National Ass'n of Postal Supervisors* at 322.

NAPS argues that it had no intention of making a profit when it originally decided to offer limited benefit memberships. It points to the $60,000.00 operating loss it

---

**3.** Statutory references are to the Internal Revenue Code (IRC) of 1954, as amended. The Code has since been amended and redesignated as the Internal Revenue Code of 1986. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, Sec. 2.

suffered during the limited benefit membership program's first two years (1981 and 1982). Further, the organization's former officers testified that their intent was to secure a health plan with the best benefits and lowest premiums, and that premiums were reduced as the number of members increased.

While earning a profit may not have been NAPS *only* motive in offering insurance to federal employees who were not postal supervisors, it was one of the primary reasons the union installed and kept the $25.00 membership fee. The Claims Court found that "NAPS knew before setting the limited benefit member dues that each individual would cost the organization less than $25.00," and that the "Executive Committee set the $25.00 dues with knowledge that this rate would generate profits." *Id.* at 322.

Treasury regulations indicate that, when considering whether an activity is a "trade or business," the purpose of Congress in enacting the unrelated business tax is important. Treas.Reg. § 1.513–1(b). One reason for the enactment was to "prevent tax-exempt organizations from competing unfairly with businesses whose earnings were taxed." *American Bar Endowment,* 477 U.S. at 114, 106 S.Ct. at 2432; *see also* Treas.Reg. § 1.513–1(b). Because NAPS competed with the FEHBP plans of commercial insurance carriers, the Claims Court properly found that "use of tax-free dollars [gave] NAPS an unfair competitive advantage." *National Ass'n of Postal Supervisors,* 21 Cl.Ct. at 323.

*AFFIRMED.*