EMPIRE BLUE CROSS AND
BLUE SHIELD, Plaintiff,

v.

CONSOLIDATED WELFARE FUND,
etc., et al., Defendants.

No. CV 92–4294.

United States District Court,
E.D. New York.

Sept. 2, 1993.

Gibson, Dunn & Crutcher, by Randy M. Mastro, New York City, for plaintiff.

Bower & Gardner, by Victor Starsia, New York City, for defendants Consol. Welfare Fund and Finiguerra.

Meiselman, Boland, Reilly & Fugazzi, by John Reilly, Jr., Mineola, NY, for defendants Evergreen Adm'rs, Sussman and Keiles.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Empire Blue Cross and Blue Shield ("Empire"), plaintiff in the above-referenced action, brought suit against the Consolidated Welfare Fund of the Journeymen Production Allied Services of America and Canada International Union Local 157 (the "Fund"), Henry Finiguerra, the Fund's Administrator; Evergreen Administrators, Inc. ("Evergreen"), the Fund's broker; and Martin Sussman and Leonard Keiles vice presidents and principal shareholders of Evergreen (collectively "defendants") for breach of contract, common law fraud, rescission of contract, violation of § 3105 of New York State Insurance Law, quantum meruit, money had and received, quasi-contract and RICO violations. Presently before the Court is defendants' motion for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure seeking dismissal of all the state claims on the ground that they are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* For the reasons stated below, defendants' motion is denied.

### I. BACKGROUND

For many years, Empire, a not-for-profit health services corporation, organized and operating pursuant to Article 43 of the New York State Insurance Law, contracted with the Fund to provide major medical, hospitalization and other welfare benefits to active members of Local 157 and their beneficiaries. The Fund purports to be an employee welfare benefit plan ("EWBP") and was created by Local 157 to provide its members health benefits.

Plaintiff alleges that Local 157 is a small New York journeymen union with approximately 500 members. Beginning in 1990, the Fund, with Evergreen acting as its broker, began enrolling for Empire coverage thousands of people who were not "active members" of Local 157 and indeed, had nothing to do with that union. Plaintiff alleges that the new enrollees were required to pay a fee, split between the Fund and the broker as a commission, in order to receive health insurance through the Fund's Empire policy. The defendants did this without informing Empire of the true status of the new subscribers, whom the union denominated as "associate members" but whom the Fund simply passed on to Empire for enrollment as "active union members."

The Fund enrolled more than 2,000 "associate members." These individuals were not covered by any collective bargaining agreement negotiated on their behalf by Local 157, nor did they look to Local 157 to conduct any such negotiations. Indeed, the "Associate Membership Fee Deduction Authorization" explicitly stated that the "associate member" understood that Local 157 was not "my collective bargaining representative for any matters other than my status and eligibility for benefits as a participant in the Consolidated Welfare Fund . . . ." Furthermore, "associate members" cannot hold union office, nominate anyone for union office, vote in union elections or be subject to any disciplinary action by the union. Moreover, although not alleged in the complaint, plaintiff now asserts that Evergreen solicited the "associated members" from a wide range of geographic locations and employment backgrounds. It is even alleged that some of the "associate members" are self-employed.

This case first came to the attention of this Court when certain "associate member" enrollees sued to compel Empire to pay their claims. This Court denied their motion for a preliminary injunction and Empire then filed the instant action.

### II. DISCUSSION

On this motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), this Court must "assume the truth of all facts" alleged in Empire's complaint and "draw all reasonable inferences in [Empire's] favor." *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 54 (2d Cir.1985). Moreover, in order to prevail on the motion, defendants must show that "no material issue of fact remains to be resolved" and that they are entitled to judgment as a matter of law. *Juster Ass'n v. City of Rutland,* 901 F.2d 266, 269 (2d Cir. 1990), *quoting,* 5 C. Wright & A. Miller,

*Federal Practice & Procedure* § 1368 at 690 (1969).

ERISA is a statutory scheme designed to promote the interests of employees and their beneficiaries. *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). As a means of effecting this policy, Congress established comprehensive and exclusive rules governing the administration of EWBPs. Thus, Congress preempted the field and denied the states the ability to regulate these plans. Congress did not intend, however, to deny the states the right to regulate insurance schemes that are not EWBPs.

Defendants argue that plaintiffs' state statutory and common law claims must be dismissed on the grounds that they are preempted by section 514(a)[1] of ERISA and that plaintiff has no standing to assert such claims under ERISA. Plaintiff, on the other hand, contends that the Fund, as it is currently constituted, is not an EWBP, but rather an insurance scheme amenable to state regulation.[2] Whether the Fund is an EWBP subject to the provision of ERISA is determined by section 3 thereof. Section 3(1) defines "employee welfare benefit plan" as:

Any plan, fund or program which was heretofore or is hereafter established by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or maintained for the purpose of providing for the participants or their beneficiaries,

through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits....

■ In *Bell v. Employee Security Benefits Ass'n,* 437 F.Supp. 382, 391 (D.Kansas 1977), the court, after examining ERISA's legislative history, set forth the characteristics of an EWBP. In order to fall within the ambit of ERISA, plans in question should: (1) be provided by an employer or homogenous employee organization; (2) be non-commercial in nature; (3) not involve solicitation; (4) not necessarily be actuarially sound; (5) have rates that are substantially lower than insurance rates. The *Bell* court concluded that

[w]hile it is obvious ... that Congress intended to give as broad a definition as possible to [EWBPs], it is also clear that it did not intend to allow companies, motivated by profit, to escape insurance regulations by setting up a program that is an [EWBP] in name only.

*Id.* at 392.

■ The Fund at issue in this case, lacks the indicia of an EWBP. The Fund is not currently maintained by a homogenous union.[3] Rather, the so-called "associate members" are drawn from a variety of trades, sharing no common employment interests. In fact, it is alleged that some of the "associate members" are self-employed. Furthermore, the Fund's broker solicited the "associ-

1. Section 514(a) provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a).

2. Plaintiff also argues that even if the Fund is an EWBP, the state claims should not be dismissed because the causes of action do not "relate to" any protected activity of a benefit plan and the Fund would be, at most, a multiple employer welfare arrangement still subject to state insurance law. Because this Court finds that the Fund is in no way an EWBP, there is no need for the Court to consider these arguments.

3. Because Local 157 now includes "associate members" drawn from the general population, plaintiff suggests that the union is not of a type contemplated by Congress. In *Bell,* the court was called on to determine whether a certain entity that styled itself an employee beneficiary association was an employee organization within the meaning of ERISA. The *Bell* court found that it was not, because its members were drawn from the general population and had no commonality of employment interest. As a consequence, the *Bell* court concluded that any fund or plan established by that entity did not differ in any meaningful way from any non-ERISA insurance company that sells benefits to working people. *Bell,* 437 F.Supp. at 396. Likewise, although this case involves a labor union instead of an employee beneficiary association, this Court fails to see the distinction between the Fund as it now stands and a non-qualified insurance company.

ate members" to join the Fund and both the Fund and broker benefitted financially from this solicitation. Under facts such as these, the current Fund cannot be said to be an EWBP within the intended meaning of ERISA.

An examination of the specific wording of the ERISA provisions also leads to the conclusion that the Fund is not a qualified ERISA plan. There is no dispute that the Fund provides to its members the benefits described in ERISA section 3(1). Rather, the issue in this case is whether the Fund is presently maintained by an employee organization. ERISA section 3(4) defines an employee organization as:

> any labor union or any organization of any kind, or any agency or employee representation committee, association, group or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employment benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4).

Defendants claim that the Fund is maintained by an employee organization, Local 157. At the outset, a persuasive argument can be made that the "associate members" are not truly members of Local 157 and thus at least with respect to those individuals, that organization cannot be deemed to be an employee organization. In *National Ass'n of Postal Supervisors v. United States,* 944 F.2d 859, 861 (Fed.Cir.1991), the court found that dues collected from "limited benefit members" of the National Association of Postal Supervisors ("NAPS"), a tax-exempt labor organization which sponsors a health plan, are subject to taxation. NAPS invited any federal employee to join the union for the sole purpose of obtaining health insurance. These limited benefit members could neither vote nor hold office. *Id.* at 860. Upholding the lower court, which had found that "limited benefit members were not really members of NAPS," the court refused to extend tax-exempt status to the collected dues. *Accord, American Postal Workers*

*Union v. United States,* 925 F.2d 480, 483 (D.C.Cir.1991).

Although the courts in these cases were not called on to determine whether the health plans at issue were ERISA-qualified, the underlying rationale of the cases, that individuals cannot be considered true members of a union if their sole connection with the union is the opportunity to buy union-sponsored health insurance, is relevant to the issue at hand. This Court can think of no reason to treat "associate members" as non-members for the purpose of taxation but members for the purpose of ERISA. Moreover, in *Soanes v. Empire Blue Cross/Blue Shield,* 91 Civ. 8698 (JES) (S.D.N.Y. July 17, 1992), a case substantially similar to the present one, the court refused to find that a plan was ERISA-qualified where associate members

> do nothing more than pay union dues. They admittedly have no other incidents of union membership—neither the ability to vote nor the requirement that they be workers in the trade nor the requirement that the union exercise in any shape, manner or form any collective bargaining responsibility on their behalf.

Hearing Transcript at 5–6.

■ Moreover, under ERISA, an employee organization must be one in which "employees participate" and it must exist for the express purpose "of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships." This organization, however, meets neither of these two prerequisites. Its so-called "associate members" do not "participate" and, indeed, are expressly prohibited from participating in the affairs of Local 157 and, by extension, in the management of the Fund. They may not vote, hold office, or be sanctioned in any way by the union. Relying on section 3(i) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 402(i), defendants argue that the term "employee participates" is intended to distinguish an organization in which employees participate from an organization in which management participates. According to defendants, Local 157 meets the definition because it is undisputed that its members are

made up entirely of employees as opposed to management personnel.

Other courts that have been called on to determine whether a particular fund or plan is ERISA qualified have looked to what role, if any, the enrollees play in the employee organization and in the management of the fund. Thus, in *Bell*, 437 F.Supp. at 394, the court found that a particular entity was not an employee organization because, among other reasons, its members did not participate in it. In that case, the defendant, an unincorporated association, advertised itself as an employee benefit plan and solicited working people to join and receive health benefits through it. The *Bell* court concluded that the defendant was not an employee organization because, although plan participants were given the right to attend and vote at an annual meeting, they were required to sign a proxy over to the defendant's officials in the event they did not attend the meeting. As it turned out, none of the enrollees attended the annual meeting. Consequently, the court concluded that employee participation in the plan was a "fiction." *Id.* at 394. *Cf. Matthew 25 Ministries v. Corcoran*, 771 F.2d 21, 22 (2d Cir.1985) ("Because [the plaintiff employers] did not disclose what role, if any, its mixed-bag group of enrollees play[ed] in the management of its trust, [it] failed to show any entitlement to federal relief under ERISA."); *accord Hamberlin v. VIP Insurance Trust*, 434 F.Supp. 1196, 1198 (D.Arizona 1977). *See also* Department of Labor Opinion Letter, No. 91–06A, 1991 WL 15945 (Jan. 15, 1991) (where "Members" and "Associate Members" have the right to hold office and vote in the affairs of the union, both classes of employees appear to "participate" within the meaning of 29 U.S.C. § 1002(4).).

■ Besides failing to meet the first prong of the employee organization definition, the union, as it currently exists, does not clearly meet the second prong either. The second prong requires that the employee organization must exist, in whole or in part, for the purpose of dealing with employers concerning an employee benefit plan or some other incident of employment. The union meets this definitional requirement with respect to its regular members. It acts as those individuals collective bargaining representative for all purposes. However, admittedly, the union does not act as its "associate members'" collective bargaining representative for any purpose other than with respect to the Fund. Moreover, although the union ostensibly agreed to act as its "associate members'" collective bargaining representative with respect to the Fund, issues of fact exist as to the legitimacy of this representation. Plaintiff alleges that certain "associate members" are self-employed. If this allegation is proven true, the union can in no way deal with those individuals' employers. This inconsistency sheds doubt on the entire "associate membership" scheme and, at this early stage of litigation, this Court is loathe to make a finding that the union meets the second prong of the employee organization definition.

■ The Fund argues that the statutory definition only requires that the union exist *in whole or in part* to deal with employers. It further argues that because it indisputedly fulfills that definition with respect to its regular members, it meets the statutory definition. Moreover, defendants also argue that the statutory definition only requires that the plan be established *ŏr* maintained by an employee organization. When the Fund was established, before the implementation of the "associate membership" program, the union was clearly an employee organization. Because the Fund was established by an employee organization, defendants argue that its ERISA-qualification continues and this Court need not analyze whether the union, as currently constituted, retains the characteristics of an employee organization. In essence, defendants are asking this Court to find that a union or other employee organization may engage in the business of selling insurance to the general public and yet still be immune from state regulation. It is clear that Congress never intended such a result.

In recognition of the growing problems created by novel insurance schemes, a congressional committee published a report on the issue. Although not contemporaneous legislative history, it is "'virtually conclusive'" as to legislative intent. *Hamberlin*,

434 F.Supp. at 1199, *quoting Sioux Tribe v. United States,* 316 U.S. 317, 329, 62 S.Ct. 1095, 1100, 86 L.Ed. 1501 (1942). That report read in pertinent part:

> We are mindful of the potentially harmful effects of an overly broad interpretation of the term "employee benefit plan" when coupled with the policy of section 514. As we have already noted, we do not believe that the statute and the legislative history will support the inclusion of what amounts to commercial products within the umbrella of the definition. Where a "plan" is, in effect, an entrepreneurial venture, it is outside the policy of section 514. . . . In short, to be properly characterized as an ERISA employee benefit plan, a plan must satisfy the definitional requirement of section 3(3) in both form and substance.

Activity Report of the Committee of Education and Labor of the U.S. House of Representatives, House Report No. 94–1785 (January 3, 1977), *quoted in Bell,* 437 F.Supp. at 392, and *Hamberlin,* 434 F.Supp. at 1199. Accordingly, this Court finds no merit with defendants' hypertechnical arguments and rejects their contention that the Fund is an EWBP. Because the Fund at issue is not ERISA-qualified, defendants' motion for partial judgment on the pleadings dismissing plaintiffs' state law claims is denied.

## III. CONCLUSION

For the above-stated reasons, defendants' motion for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is denied.

SO ORDERED.