Lisa LETNER, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.

No. 5:00CV270–SPM.

United States District Court,
N.D. Florida,
Panama City Division.

Aug. 3, 2001.

---

Daniel Mark Soloway, Daniel M. Soloway PA, Pensacola, FL, for Plaintiff.

Jonathan Matthew Fordin, Proskauer, Rose, Goetz & Mendelsohn, Boca Raton, FL, for Defendant.

### ORDER

MICKLE, District Judge.

This cause comes for consideration upon the magistrate judge's report and recommendation (doc. 13). The parties have been furnished a copy and afforded an opportunity to file objections. No objections have been filed. Pursuant to 28 U.S.C. § 636(b)(1), I have determined that the report and recommendation should be adopted. Accordingly, it is hereby

ORDERED AND ADJUDGED:

1. The magistrate judge's report and recommendation (doc. 13) is adopted and incorporated by reference in this order.

2. Plaintiff's Motion for Remand to State Court (doc. 5) is granted. This case is remanded to the Circuit Court, Fourteenth Judicial Circuit, in and for Jackson County, Florida.

3. The Court retains jurisdiction to award attorney's fees and costs to Plaintiff for Defendant's improper removal. If Plaintiff wishes to pursue an award for such fees and costs, Plaintiff shall submit to the Court, within ten (10) days of the date of this order, affidavits in support of any costs and actual expenses, including attorney's fees, so incurred. Any objections to the claimed fees and costs must be filed by Defendant within ten (10) days of the date of service of Plaintiff's supporting affidavits. An order will be entered at that time regarding the amount of fees and costs to be awarded.

4. The clerk shall return this case to the undersigned no later than August 27, 2001.

1. This court provided the parties with the opportunity to submit additional evidence, including offers of proof. UNUM submitted

### REPORT AND RECOMMENDATION

WAGNER, United States Magistrate Judge.

#### I. Procedural Background

On or about October 13, 2000, Plaintiff Lisa R. Letner ("Letner") filed the instant action in the Circuit Court for Jackson County, Florida. In her complaint, Letner asserts a breach of contract claim and seeks to recover benefits under a long term disability policy issued by Defendant UNUM Life Insurance Company of America ("UNUM"). Letner also requests declaratory relief. On November 10, 2000, UNUM filed a notice of removal pursuant to 28 U.S.C. § 1446. UNUM claims that Letner's policy is an employee benefit plan that is subject to federal jurisdiction under the pre-emption doctrine pursuant to Employee Retirement Income Security Act (ERISA). On or about November 28, 2000, Letner moved to remand the action to the state court on the grounds that her claim is simply a state law breach of contract claim which is not subject to ERISA.

If Letner's policy falls within the purview of ERISA, then it was proper for this case to be removed to federal court. If, on the other hand, Letner's policy is not an ERISA plan, then the federal courts have no jurisdiction of this case; it should not have been removed from the Florida state court where it was filed, and the case must be remanded to that state court.

Due to the lack of necessary information on the record, and although clearly not required, the court provided the parties with the opportunity to submit additional evidence on the jurisdictional issue. (Doc. 10). Both parties presented evidence on the issue of whether Letner's insurance policy is an employee welfare benefit plan within the meaning of ERISA's pre-emption clause that would support the exercise of federal jurisdiction.[1] (Docs. 11 & 12).

only an offer of proof. UNUM's offer of proof partially relies upon proposed testimony of

After reviewing all the evidence, the court is unable to state as a matter of law that the facts support the exercise of federal subject matter jurisdiction under the ERISA provisions.

Specifically, in the instant case, UNUM has failed to provide any reliable factual basis that would demonstrate (1) that Letner's insurance policy qualified as an employee benefit plan that is subject to ERISA; (2) that Letner's insurance policy is not excluded from the safe harbor provisions which exempt a "plan" from the confines of ERISA, or (3) that Letner's employer established or maintained the plan.

## II. Findings of Fact

1. Prior to or during 1992, Rodney Rich ("Rich"), an independent insurance broker, established an account with Jackson Hospital ("Jackson") in Marianna, Florida. A group policy was issued to Jackson which provided long term disability benefits for certain employees. Defendant UNUM was the group insurance carrier. Doc. 6, Exhibit A, Rich affidavit, ¶ 4.

2. The declaration page to the group policy expressly states that the plan was issued to "Jackson Hospital for its employees" and was identified by Number 292674. The group policy expressly states that it is covered by ERISA. *Id.* ¶ 6.

3. Jackson limited coverage of the group policy to its "regular" (non-management) employees. *Id.* The group's policy benefits were fixed and contingent upon the individuals' employment with Jackson. The group policy was also subject to unilateral cancellation by either UNUM or Jackson. *Id.* ¶ 10.

4. Letner was excluded from coverage under the terms of the group policy by Jackson because she was a management

employee. There came a time when Jackson provided Rich with access to its management employees. Rich met with Jackson's management employees, including Letner, and offered them the opportunity to purchase individual, executive-professional policies. *Id.* ¶ ¶ 7–9.

5. Letner applied for and purchased a separate and distinct policy from the group plan. *Id.* Although UNUM was the insurer for Letner's policy, Jackson did not sponsor the policy. *Id.* ¶ ¶ 19–10.

6. Letner, as opposed to Jackson, owned the policy and was the named insured. Letner's policy was not contingent on her employment with Jackson and was not subject to cancellation by Jackson or UNUM. *Id.* ¶ 10.

7. Jackson did not make any financial contribution toward Letner's policy. *Id.* ¶ 11. Jackson simply withheld Letner's premiums through payroll deduction and forwarded them to UNUM. *Id.* ¶ 12. Jackson was not compensated by UNUM for this ministerial task. *Id.*

## III. Discussion

### A. *Removal Jurisdiction.*

█ A civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed by the defendant to the district court of the United States. 28 U.S.C. § 1441(a). Removal is appropriate only if the district court has original jurisdiction. 28 U.S.C. § 1447. Since removal jurisdiction raises significant federalism concerns, lower courts are directed to construe removal statutes strictly. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941);

---

Rodney Rich, the independent insurance broker. Doc. 11, p. 5. UNUM presents no evidence, however, of any intent of which to disaffirm his affidavit dated November 27,

2000 or his supplemental affidavit dated March 1, 2001. Thus, the reliability of UNUM's offer of proof is highly questionable.

*Diaz v. Sheppard,* 85 F.3d 1502, 1505 (11th Cir.1996). It is well settled that all doubts should be construed against removal. *Burns v. Windsor Insurance Co.,* 31 F.3d 1092, 1094–95 (11th Cir.1994); *Univ. of S. Alabama v. American Tobacco Co.,* 168 F.3d 405, 409 (11th Cir.1999) (*quoting* the United States Supreme Court [lower federal courts] "should proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction") (citations omitted). UNUM bears the burden to prove the existence of federal jurisdiction that will properly support removal.[2] *Diaz,* 85 F.3d at 1505; *Mellman v. Sprint Communications Co.,* 975 F.Supp. 1458, 1460 (N.D.Fla.1996).

### B. *ERISA and Removal.*

 Generally, an action arises under federal law only if issues of federal law are raised in the plaintiff's well-pleaded complaint. *See: Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The "complete preemption" doctrine is an exception to this rule. *See: Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1211–12 (11th Cir.1999). This doctrine provides that to the extent that Congress has displaced a plaintiff's state law claim, the state law claim will be recharacterized as a complaint arising under federal law. *Id.; See also: Rivers v. Health Options Connect, Inc.,* 96 F.Supp.2d 1370 (S.D.Fla.2000) (providing an extensive analysis on the preemption doctrine).

When ERISA was enacted in 1974, Congress' intent was two fold—to provide protection for employees and at the same time encourage employers to voluntarily establish pension and benefit plans. *Williams v. Wright,* 927 F.2d 1540, 1543 (11th Cir.1991). Nevertheless, Congress' primary focus was "to protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans." *Donovan v. Dillingham,* 688 F.2d 1367, 1370 (11th Cir.1982) (*en banc*). Once an employer voluntarily establishes a plan, Congress' intent was to ensure that its employees would actually receive the promised benefits. *Williams,* 927 F.2d at 1543. Thus, through ERISA, Congress established the minimum standards for the vesting of employee benefits, funding of benefits, carrying out fiduciary responsibilities, governmental reporting requirements, and participant disclosure requirements. *Donovan,* 688 F.2d at 1370 *citing* H.R.Rep. No. 93–533, 93rd Congress, 2d Sess., *reprinted in* U.S.C.C.A.N. 4639 (1974).

 ERISA is to be liberally construed; however, even if preemption is at issue, removal must still be approached with great care. *Caterpillar v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *See generally: California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). Thus, a plaintiff may not seek to defeat federal jurisdiction under ERISA by artfully pleading his claim as a state breach of contract claim. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Likewise, a defendant may not convert a state-law claim into one arising under ERISA in an attempt to select the forum or to escape

---

**2.** A defendant must not cavalierly invoke federal jurisdiction. Pursuant to 28 U.S.C. § 1446(a), a defendant's notice of removal is signed subject to Rule 11 of the Federal Rules of Civil Procedure. Further, "[e]very lawyer is an officer of the court. And, in addition to his duty of diligently researching his client's case, he always has a duty of candor to the tribunal." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994) (addressing the issue of removal based upon diversity).

state law remedies otherwise available to plaintiff. *See: Caterpillar*, 482 U.S. at 399, 107 S.Ct. 2425; *See e.g.: Hunt v. Hawthorne Assoc., Inc.*, 119 F.3d 888, 907–08 (11th Cir.1997) (ERISA plaintiff is not entitled to a jury trial); *Gahn v. Allstate Life Ins. Company*, 926 F.2d 1449, 1453–54 (5th Cir.1991) (ERISA precluded application of state's "abuse of rights" theory); *Hamberlin v. VIP Ins. Trust*, 434 F.Supp. 1196, 1199 (1977) (an insurance company cannot trigger ERISA jurisdiction by marketing a plan as an "ERISA benefit plan" to avoid state regulations).

▮ Whether an ERISA plan exists bears upon jurisdiction and is a question of fact for the court to decide. *Riggs v. Smith*, 953 F.Supp. 389, 390 n. 1 (S.D.Fla. 1997); *See: Gahn*, 926 F.2d at 1451 *citing Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1082 (1st Cir.1990), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). In the instant case, federal question jurisdiction exists and removal is proper only if Letner's state law claims arise in an area that has been displaced by ERISA.

### C. *ERISA and Substantive Analysis.*

To invoke federal jurisdiction, a defendant must prevail on the threshold question of whether the instant insurance policy is a "plan, fund, or program" within the definitional framework of ERISA. An employee benefit plan which falls under the ambit of ERISA is statutorily defined as:

> any plan, fund, or program established or maintained by an employer or by an

employee organization ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance of otherwise ... benefits in the event of sickness, accident, disability, death, or unemployment.

29 U.S.C. § 1002(1).

This statutory framework has proven to be elusive at best. *See e.g.: California Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) ("we have endeavored with some regularity to interpret and apply the "unhelpful text" of ERISA's pre-emption provision"). In a seminal case, the Eleventh Circuit provides guidance.[3] *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir.1982) (*en banc*). The *Donovan* court explained:

> [t]he gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants because of their employee status in an employment relationship, and an employer or employee organization is the person that establishes or maintains the plan, fund, or program.

*Id.* The *Donovan* court instructed that "[i]n determining whether a plan, fund, or program ... is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficia-

---

**3.** These courts have followed *Donovan. See e.g.: Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 602–03 (6th Cir.1999); *Cinelli v. Security Pacific Corp.*, 61 F.3d 1437, 1442 (9th Cir. 1995); *Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1257 (D.C.Cir.1994); *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 861–62 (4th Cir.1994); *Smith v. Hartford Ins. Group*, 6 F.3d 131, 136 (3rd Cir.1993); *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1047 (10th Cir.1992); *Landry v. Air Line Pilots Assoc. Int'l*, 901 F.2d 404, 415 (5th Cir.1990), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Ed Miniat, Inc. v. Globe Life Ins. Group Co.*, 805 F.2d 732, 739 (7th Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987); *Harris v. Arkansas Book Co.*, 794 F.2d 358, 360 (8th Cir. 1986).

ries, source of financing, and procedures for receiving benefits." *Id.* at 1373.

At first blush, it seems that the *Donovan* court's test would encompass an employee's purchase of an insurance policy. Unfortunately, this test is little more than a passing mention in most cases. Since the employer or an employee organization is the source of funding, courts have not found it necessary to address this issue at length. The present case is distinguishable since Letner purchased an individual policy and her employer made no financial contribution.

As one court aptly noted, a cursory review or the plan requirement is inconsistent with the legislative intent behind ERISA. *Suggs v. Pan American Life Ins. Co.*, 847 F.Supp. 1324, 1346—47 (S.D.Miss. 1994). An insurance policy may provide the essentials for a plan, but holding an insurance policy to be a plan *per se* contradicts the spirit of the legislative intent. *Id.* Given the facts in the present case and pursuant to the principles embraced by the Eleventh Circuit, this court conducted a closer examination of whether an employee benefit plan existed or whether this case simply involves the sale of an insurance product. *See: Hamberlin v. VIP Ins.*

*Trust,* 434 F.Supp. 1196, 1199 (D.C.Ariz. 1977) *cited by Donovan,* 688 F.2d at 1373 n. 11.[4] *See also: Williams v. Wright,* 927 F.2d 1540, 1543 (11th Cir.1991) *citing to Donovan,* 688 F.2d 1367 (11th Cir.1982) (*en banc* ).

*An independent examination of Letner's policy is required.*

■ In its opposition to Letner's Motion for Remand, UNUM refers to a group policy provided by Jackson to its non-management employees interchangeably with Letner's individual policy. UNUM seems to contend that since Jackson established an ERISA group policy. Letner's individual policy is also subject to ERISA. UNUM's proposition confuses "apples with oranges." *Maniccia v. Brown,* 171 F.3d 1364, 1368–69 (11th Cir.1999) (otherwise inapplicable) *citing to Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 19 (1st Cir.1989) ("apples should be compared to apples") (otherwise inapplicable). The law is clear—Letner's policy does not qualify as an ERISA plan simply because her employer may have provided a group policy for a class of non-management employees in which she was not included.[5]

■ In *Donovan,* the Eleventh Circuit found that while purchase of an insurance

---

**4.** The *Hamberlin* court astutely noted:

"It has come to our attention, through the good offices of the National Association of State Insurance Commissioners, that certain entrepreneurs have undertaken to market insurance products to employers and employees at large, claiming these products to be ERISA covered plans ... The entrepreneur will then argue that his enterprise is an ERISA benefit plan which is protected, under ERISA's preemption provision, from state regulation. We are concerned with this type of development ... these plans are established and maintained by entrepreneurs for the purpose of marketing insurance products or services to others. They are not established or maintained by the appropriate parties to confer ERISA jurisdiction, nor is the purpose for their

establishment or maintenance appropriate to meet the jurisdictional prerequisites of the Act. They are no more ERISA plans than is any other insurance policy sold to an employee benefit plan ... we do not believe that the statute and legislative history will support the inclusion of what amounts to commercial products within the umbrella of the definition. Where a 'plan' is, in effect, an entrepreneurial venture, it is outside the policy of section 514 for reasons we have already stated. In short, to be properly characterized as an ERISA employee benefit plan, a plan must satisfy the definitional requirement of section 3(3) in both form and substance."

**5.** The record does not conclusively establish, nor is it germane in the instant case, whether the "group policy" is an ERISA plan.

policy is evidence of a plan, purchase of group insurance policy is *substantial* evidence of a plan, 688 F.2d at 1373. Contrary to Defendant's implicit argument, although the essentials of a policy may be the basis for a plan, the plan's essentials can't be derived from a different policy. *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 713 (11th Cir.1997) ("non-ERISA benefits do not fall within ERISA's reach merely because they are included in a multi-benefit plan along with ERISA benefits").

The Eleventh Circuit revisited the multiple policy issue in *Slamen v. Paul Revere Life Ins. Co.*, 166 F.3d 1102, 1103 (11th Cir.1999). In *Slamen*, an employer provided a group health and life insurance plan that provided coverage for both himself and his employees. Additionally, the employer purchased supplemental disability coverage for only himself. *Id.* When the insurer refused to pay benefits under the disability policy, the employer filed suit in state court. *Id.* The insurer removed the action to federal court. *Id.* The court, after an independent examination of the supplemental coverage, found that the disability plan was "not converted into an ERISA plan merely because [the employer] also provides ERISA benefits to his employees." *Id.* at 1105 *citing to Zeiger v. Zeiger*, 131 F.3d 150 (9th Cir.1997) ("A non-ERISA plan is not converted into an ERISA plan merely because an employer also sponsors a separate benefits plan subject to ERISA.").

Here, Letner provides the sworn testimony of the independent broker from whom she purchased her policy. Rich states the individual policies he sold to Jackson's management employees had no relationship to the group policy that Jackson provided for its non-management employees. (Doc. 6, Exhibit A ¶¶ 6, 9). The record in the instant case supports Rich's sworn statements.[6] Jackson excluded Letner, along with other management employees, from coverage under the group policy that UNUM contends is an ERISA plan. Although UNUM collectively refers to the Jackson's group policy and the individual policies purchased by the managerial employees as the "Jackson Plan." UNUM fails to show any relationship between the group policy and Letner's individual policy. More troubling though, UNUM bases its argument on both the alleged ERISA employee group benefit plan and the policy at issue in an effort to establish federal jurisdiction which is directly contrary to both statutory and case authority.

In accordance with principles articulated by the Eleventh Circuit in *Slamen*, UNUM's attempt to bootstrap Letner's individual policy into the confines of ERISA by intermingling the separate and distinct group ERISA plan is not successful to confer federal jurisdiction. *Slamen*, 166 F.3d at 1102. Indeed, Jackson's group policy has no bearing on whether Letner's individual policy is subject to ERISA.

Nevertheless, given ERISA's elusive statutory framework and the paucity of case authority addressing this issue, this court also considered whether the Department of Labor's safe harbor regulations would provide support for the court's exercise of jurisdiction.[7]

---

**6.** Each individual policy is numbered individually as opposed to a group identification number. Defendant's Offer of Proof, p. 4. n. 3.

**7.** In a concurring opinion, Justice Scalia joined by Justice Ginsberg, noted that since ERISA was enacted in 1974, the Court has accepted certiorari in, and decided, 14 cases to resolve various conflicts regarding ERISA preemption cases, and the Court's rate of acceptance has not diminished, suggesting that [the Court's] prior decisions have not succeeded in bringing clarity to the law. *California Div. of Labor Standards Enforcement, et al. v. Dillingham Constr.*, 519 U.S. 316,

## D. *ERISA and the Department of Labor's Safe Harbor Regulations.*

In an effort to provide clarification of the ERISA preemption clause, the Department of Labor promulgated regulations that explicitly identify certain practices which do not constitute employee welfare benefit plans included under the ambit of ERISA, 29 C.F.R. § 2510.3–1(a)(1) (1993). Specifically, the safe harbor regulations provide:

*Certain group or group-type insurance programs.* For purposes of Title 1 of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1) No contributions are made by an employer or employee organization;

(2) Participation [in] the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

■ Since a removing defendant bears the burden of proving federal jurisdiction, UNUM bears the burden of demonstrating that the Letner's insurance policy fails to meet at least one of the criteria of the safe harbor regulations. *See: Riggs v. Smith,* 953 F.Supp. 389, 393–94 (S.D.Fla.1997) ("once an insurance plan meets all four criteria of the safe harbor provision, the Court's inquiry concludes, and ERISA is conclusively deemed not to preempt a plaintiff's state law claims"); *Accord: Byard v. QualMed Plans for Health, Inc.,* 966 F.Supp. 354, 358 (E.D.Pa.1997).

In the instant case, Letner stated under oath that she voluntarily purchased the insurance policy (Doc. 6, Exhibit B). Additionally, UNUM did not establish that it provided any compensation to Jackson in connection with Letner's policy. Thus, to defeat safe harbor status, UNUM must establish either that Jackson contributed, in whole or part, towards the purchase of Letner's policy or that Jackson participated in some way beyond the scope allowed by the safe harbor regulations.

1. *UNUM failed to provide this court with any evidence that Jackson made a contribution that would defeat safe harbor status.*

■ If the removing party demonstrates that the insured's employer paid or subsidized the insurance premiums, generally, the safe harbor status is defeated under the first factor. *See e.g.: Randol v. Mid–West Nat'l Life Ins. Co. of Tennessee,* 987 F.2d 1547, 1552 (11th Cir.1993) (employer paid $75 per month for employee's premiums); *Smith v. Jefferson Pilot,* 14 F.3d 562, 568 (11th Cir.1994) (employer paid the entire premium for employee); *Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1343 (11th Cir.1994) (employer paid the premium for employee).

■ In the instant case, UNUM contends that it provided Letner with a fifteen percent (15%) discount because she select-

334–35, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997).

ed payroll deduction for payment of her premiums. Without any supporting authority, UNUM states that this discount should qualify for an employer contribution. (Doc. 11 ¶ 20). Defendant's argument is against the weight of authority.

It is "highly improbable" that *de minimus* and indirect contributions would resolve the issue of ERISA jurisdiction. *Riggs v. Smith,* 953 F.Supp. 389, 394 (S.D.Fla.1997). In *Riggs,* the employer paid the membership fee to the local Chamber of Commerce to provide eligibility for his employees under a Chamber of Commerce policy. The district court found that this "contribution" would not defeat safe harbor status since that "[t]o the extent that this was a subsidy of the insurance plan, it was so indirect and *de minimis* as not to constitute a 'contribution' within the meaning of the first prong of the safe harbor provision." *Id.*

UNUM did not provide, and the court could not locate, any authority suggesting that the term "contribution" in the context of the ERISA safe harbor regulations is interpreted as anything other than a financial contribution—thereby defeating the safe harbor status. *See e.g.: Postma v. Paul Revere Life Ins. Co.,* 1998 WL 641335, *5 (N.D.Ill.1998) (employer did not make *financial* contributions to the plan) (emphasis added); *Hrabe v. Paul Revere Life Ins. Co.,* 951 F.Supp. 997, 1000–22 (M.D.Ala.1996) ("[s]ince [the employer] paid no part of the employees premiums, the court finds that [the employer] did not make a contribution"). There are courts that have succinctly held that absent an employer's financial contribution, the plan is not governed by ERISA. *See: Glover v. Jobmate of Mississippi, Inc.,* 887 F.Supp. 926, 936 n. 20 (S.D.Miss.1995) ("It cannot reasonably be contended that ERISA plans were established in those instances in which the cost of coverage was shouldered entirely by the employee."); *Gard-*

*ner v. E.I. Dupont De Nemours and Co.,* 939 F.Supp. 471, 474 (S.D.W.Va.1996) ("The Department of Labor has issued regulations stating that if the employer merely facilitates the purchase of a group insurance policy *paid for entirely by the employees,* the employer is not establishing a plan") (emphasis added).

2. *UNUM did not submit any evidence of Jackson's conduct that would qualify for endorsement.*

 If Jackson, Letner's employer, endorsed her policy, she may not seek shelter in the safe harbor. The third factor closely parallels the underlying policy of the safe harbor regulations which operate "on the premise that the absence of employer involvement vitiates the necessity for ERISA safeguards." *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995): *See also: Love v. Fortis Benefits Ins. Co.,* 120 F.Supp.2d 997 (M.D.Ala.2000). In this jurisdiction and pursuant to the safe harbor regulations, an employer may publicize a program and collect its employee's premiums without constituting endorsement of the plan under the safe harbor regulations. *Randol v. Mid–West Nat'l Life Ins. Co. of Tennessee,* 987 F.2d 1547, 1551 (11th Cir.1993) (employer's publication and payroll deduction alone is outside ERISA if participation was voluntary and employer did not subsidize the plan); *Compare: Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1213–14 (11th Cir.1999) (the employer "picked the insurer; it decided on key terms, such as portability and the amount of coverage; it deemed certain employees ineligible to participate; it incorporated the policy terms into the self-described summary plan description for its cafeteria plan; and it retained the power to alter compensation reduction for tax purposes").

In *Riggs*, the employees asked their employer for insurance and the employer solicited quotes on premium rates and arranged times for presentation of plans. *Riggs*, 953 F.Supp. at 396. There was no evidence that their employer steered its employees toward any particular option over another and the court found that "[a]s in Johnson, 'the employer separate[d] itself from the program, making it reasonably clear that the program [was] a third party's offering, not subject to the employer's control.'" *Riggs*, 953 F.Supp. at 396, *quoting Johnson*, 63 F.3d at 1137.[8]

Again, this court is not faced with a "close call." Plaintiff has provided through sworn testimony that Jackson simply provided an independent insurance broker with the opportunity to sell insurance products to its management employees. Letner selected payroll deduction for payment of her insurance premiums and in return UNUM gave her a 15% discount. Jackson's role was limited to the administrative task of implementing the payroll deduction. Jackson neither endorsed, made a contribution, nor received compensation in connection with the purchase of Letner's policy. Since Letner's policy is excluded from the ambit of ERISA pursuant to the safe harbor regulations, the court concludes its analysis. *Riggs*, 953 F.Supp. at 393–94 ("once an insurance plan meets all four criteria of the safe harbor provision, the Court's inquiry concludes and ERISA is conclusively deemed not to preempt a plaintiff's state law claims").

 The court has statutory authority to award just costs and any actual expenses, including attorney's fees, incurred as a result of the removal. 28 U.S.C. § 1447(c). The instant case was removed without a scintilla of legitimate evidence that would support the exercise of federal jurisdiction. Defendant UNUM should be responsible for these costs. Therefore, the court respectfully recommends the following:

1. That the instant case be remanded to state court due to the lack of subject matter jurisdiction.

2. That the Court award the Plaintiff just costs, including reasonable attorney's fees, incurred as a direct cause of UNUM's attempt to remove this case to federal court.

---

8. Many courts rely heavily upon the First Circuit's decision in *Johnson v. Watts Regulator Co.*, 63 F.3d 1129 (1st Cir.1995). In *Johnson*, the court agreed with the district court and at stated that ERISA did not preempt state law claims under the following facts:

—although the employer distributed the sales brochure, waiver-of-insurance cards, and enrollment cards, the documents themselves were prepared and printed by the insurer and delivered to the employer for distribution. The employers' efforts were undertaken simply to publicize the program on behalf of the insurer;

—although the employer recommended enrollment via a cover letter ... written on the letterhead of Watts Industries and signed by it's vice-president for financial matters, the letter explicitly informed its employees that the enrollment decision was theirs to make.

—there was no evidence that the employer suggested that it had any control over, or proprietary interest in, the group insurance program.

—finally, the court noted that neither the employer's letter nor any other passage in the brochure mentioned ERISA.