NORTHCUTT, Judge.
Allen Rasmussen, Sr., appeals a partial final summary judgment in favor of Time Insurance Co., which was based on the circuit court’s conclusion that Rasmussen’s state-law claims were preempted by the federal Employee Retirement Income Security Act (ERISA). Rasmussen argues that ERISA does not apply. We agree and reverse.
Rasmussen was covered by a group medical policy through his employer, Cook & Nook Cabinets, which later became Rasmussen Inc. This was a small, family-owned business run by Rasmussen’s son and daughter-in-law. According to the deposition of Jo Ellen Rasmussen, the company’s secretary and treasurer, she and her husband wanted insurance for their family. They spoke with Lewis Holcomb, an insurance agent, and he arranged group coverage in Time Insurance Co.’s Signature II MET (Multiple Employers’ Trust). Participation in the group was open to permanent full-time employees who actively worked at least thirty hours a week at Cook & Nook.
The parties filed competing claims for summary judgment on the ERISA issue. While the insurance documents conflict with Cook & Nook’s practices, there are no disputed issues of fact pertinent to the *355 ERISA issue. In deposition, Jo Ellen testified that she and her husband contacted Holcomb to obtain insurance for their family, and Holcomb told her that this policy was the best way to go about it. According to the Employer’s Administration Guide provided by Time, “All full-time employees must carry Life, AD & D [Accidental Death and Dismemberment], and if chosen by the employer, Disability coverage.” But according to Jo Ellen, participation was completely voluntary on the employees’ part. The Employer Participation Agreement and Application stated, “It is agreed that the employer will pay at least the required premium for the employees.” But Jo Ellen testified that each employee paid for his or her own coverage through payroll deductions, and she remitted the premiums with a single business check. She further testified that Holcomb told them he set up the policy the way they wanted and told them not to worry about certain things.
Jo Ellen also testified that she referred all questions about the insurance to the agent, Holcomb. When new employees started, she told them about the group policy. Jo Ellen did not explain the insurance benefits; she just told them to call Holcomb. If an employee wanted to participate, Holcomb would come to the business and obtain the requisite information. If employees had claims, she referred them to Holcomb.. If a participating employee decided to cancel coverage, she crossed out the employee’s name when she mailed the premium payment. Jo Ellen also testified that she never received any documents from Time for posting in the workplace, she did not recall receiving any correspondence from Time relating to employees, she did not recall ever being referred to as the administrator of the plan, and she never received money or reimbursement from Time. The ERISA statute and attendant rights are nowhere mentioned in the insurance documents.
The case takes a bit of a twist because Cook & Nook filed bankruptcy in February 1991 and closed its doors. According to the allegations of Rasmussen’s third-amended complaint, he informed Holcomb of this development, and Holcomb told him to pay his premiums by personal check. Around July, Rasmussen applied for an individual conversion health insurance policy. Time denied the application because Rasmussen was “too old.” Holcomb then advised Rasmussen to continue with the group policy until he was sixty-four-and-a-half years old, and Rasmussen continued to pay his premiums. Rasmussen was essentially a group of one because Jo Ellen and her husband could not afford the insurance after the company went bankrupt. In November and December, Rasmussen incurred medical bills in excess of $71,000 for a preapproved hospitalization. But Time refused to pay the insurance claims and retroactively cancelled Rasmussen’s health insurance.
In Rasmussen’s third-amended complaint, he alleged the following claims against Time: a count for declaratory relief, an alternative count for violation of ERISA, a count for equitable estoppel, and a count for respondeat superior tied to a negligence count against Holcomb. Rasmussen does not dispute that the counts for declaratory relief, equitable estoppel, and respondeat superior are preempted if ERISA controls the case, and he has not appealed the adverse judgment on the alternative count alleging a violation of ERISA. Time ultimately raised eighteen affirmative defenses. On cross motions for summary judgment, the circuit court ruled that the ERISA defense prevailed.
ERISA “is a comprehensive federal law governing employee benefits.” Thompson v. Am. Home Assurance Co., 95 F.3d 429, *356 434 (6th Cir.1996). The fundamental policy concerns at the heart of ERISA have been grouped into two broad, overlapping categories: the protection of employers, which is served by ERISA’s creation of a uniform regulatory system and the preemption of conflicting laws; and the protection of employees, which is served by ERISA’s provisions that “are intended to safeguard the financial integrity of employee benefit funds, to permit employee monitoring of earmarked assets, and to ensure that employer promises are kept.” New England Mut. Life Ins. Co. v. Baig, 166 F.3d 1, 3^4 (1st Cir.1999) (citation and internal quotation marks omitted); see also Letner v. Unum Life Ins. Co., 203 F.Supp.2d 1291, 1296 (N.D.Fla.2001) (“When ERISA was enacted in 1974, Congress’ intent was two fold — to provide protection for employees and at the same time encourage employers to voluntarily establish pension and benefit plans.”). “[T]he absence of employer involvement vitiates the necessity for ERISA safeguards.” Johnson v. Watts Regulator Co., 63 F.3d 1129, 1133 (1st Cir.1996).
With a few exceptions not relevant here, and briefly stated, ERISA applies to any “employee benefit plan” or “employee welfare benefit plan” established or maintained by an employer. Donovan v. Dillingham, 688 F.2d 1367, 1370 (11th Cir. 1982). Under 29 U.S.C. § 1002(1), an employee welfare benefit plan is defined as
any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....
The Eleventh Circuit has parsed this definition to five requirements: “(1) a ‘plan, fund, or program’ (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical [or other benefits] ... (6) to participants or their beneficiaries.” Donovan, 688 F.2d at 1371.
“ ‘Established or maintained’ appears twice in the definition of an employee welfare benefit plan: first, an employer ... must establish or maintain a plan, fund, or program, and, second, the plan, fund, or program must be established or maintained for specified purposes.” Donovan, 688 F.2d at 1372. “[T]he employer must have a certain intent — a purpose to provide benefits to its employees.” Hansen v. Cont’l Ins. Co., 940 F.2d 971, 977 (5th Cir.1991).
In this case, the employer at no time intended to provide benefits to its employees. Jo Ellen Rasmussen testified, without contradiction, that her family procured group insurance for themselves through their business and allowed their employees to insure themselves as they saw fit. “A mere purchase of insurance by an employer is not sufficient to establish a plan under ERISA.” New England Mut. Life Ins. Co., 166 F.3d at 4. “An insurance policy may provide the essentials for a plan [under ERISA], but holding an insurance policy to be a plan per se contradicts the spirit of legislative intent.” Letner, 203 F.Supp.2d at 1298 (distinguishing between the simple sale of an insurance product and the existence of an ERISA plan, which must satisfy the definition in both form and substance).
*357 Because the uncontroverted testimony demonstrates that the employer never intended to provide benefits to its employees, we conclude that the circuit court erred in finding that the employer established or maintained an ERISA plan and thus erred in holding that ERISA preempted Rasmussen’s state-law claims. We make no comment on either the validity of his claims or the merits of Time’s remaining affirmative defenses.
Reversed and remanded for further proceedings.
SALCINES and COVINGTON, JJ., Concur.