PITMAN, J.
1 ,A jury convicted Defendant Bobby Charles Byrd as charged of aggravated flight from an officer in violation of La. R.S. 14:108.1. He was adjudicated a fourth felony habitual offender, and the trial court initially sentenced him to 25 years at hard labor, a departure from the mandatory sentence of life imprisonment imposed by La. R.S. 15:529.1. Following a motion to reconsider sentence filed by the state, the trial court resentenced Defendant to the mandatory term of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals his conviction and sentence. For the following reasons, we affirm.

FACTS

On May 15, 2012, the state filed a bill of information charging Defendant with aggravated flight from an officer. On January 15, 2013, the state filed an amended bill of information, alleging that Defendant “drove through red lights and stop signs without stopping.”
Cpl. Mary Jo Coburn Garrett, Cpl. K.M. Mormon and Det. Robert Gordon, all with the Shreveport Police Department, testified at trial, which began on January 14, 2013. Cpl. Garrett testified that she was patrolling downtown Shreveport on July 20, 2011, when Det. Gordon requested over the police radio that a tan-colored minivan be stopped because it matched the description of a suspect vehicle involved in other crimes. She stated that she saw the minivan proceeding on Caddo Street and initiated a traffic stop with lights and sirens *539 from her marked police unit.[1] She further stated that |?the minivan came to a stop and that she and Cpl. Mormon, who was in another police unit, exited their units and approached the minivan. Cpl. Mormon approached the driver’s door and Defendant “immediately put the vehicle into drive and sped off.” Cpl. Garrett stated that she and Cpl. Mormon got back in their units and began a pursuit of the minivan through downtown Shreveport.[2] She testified that Defendant drove through red lights during the pursuit and that she had to drive 59 mph[3] in a 35 mph-zone to keep up with Defendant’s vehicle.[4] She also testified that she observed Defendant fail to stop at stop signs on Traffic Street[5] and that he stopped the minivan where Traffic Street dead ends at the levee and exited his vehicle. She stated that she stopped and exited her unit at the levee and helped establish a perimeter around the area in which Defendant was thought to be located.
Cpl. Mormon testified that she was working patrol on the afternoon of July 20, 2011, when she was contacted by Det. Gordon to stop a vehicle that was possibly connected to several recent burglaries. Cpl. Mormon stated that she viewed the vehicle and initiated a traffic stop with lights and sirens at Louisiana Avenue and Caddo Street and was joined by Cpl. Garrett and Det. Gordon. She testified that she approached the driver’s side of the |,⅞vehicle and requested that the driver (Defendant) turn off the vehicle, but Defendant put his vehicle in drive and drove off from the stop. She stated that she and the other officers returned to their police units to follow Defendant, which occurred at approximately 2:20 in the afternoon on a work day where the streets were busy with many cars and people. She also stated that the lights and sirens on her vehicle were activated during the pursuit and that the officers were vigilant not to cause any accidents. She testified that Defendant ran several red lights during the pursuit that took them from downtown Shreveport and across the Texas Street bridge into a residential area[6] and that Defendant did not stop at any stop signs and drove much faster than the 25 mph posted speed limit.[7] She stated that Defendant then drove to where the road came to a dead end at the levee, exited his vehicle and began running away. She stated that she stopped and exited her unit and assisted in setting up a perimeter around the area where Defendant had fled. She further testified that she remained at her post and did not observe Defendant again until he was apprehended and then identified Defendant *540 as the same person she observed driving the vehicle during the initial traffic stop.
Det. Gordon testified that he worked in the property crimes unit on July 20, 2011, and, while investigating a string of burglaries of nightclubs in Shreveport, obtained a photograph from a surveillance camera of the vehicle driven by a suspect in the burglaries at Tiki Bar and Grill. He noted that the |4photograph depicted “a light colored either Dodge or Chrysler minivan that’s an early '90’s model. And ... it’s missing the right front hubcap.” He stated that the suspect was observed on a grainy video as a white or Hispanic male and that copies of the photographs were distributed to the patrol division. Shortly after lunchtime on July 20, 2011, a vehicle matching the description was spotted in the Allendale neighborhood. Det. Gordon drove to the location and found that the minivan was parked in a parking lot and was unoccupied. He testified that he conducted surveillance on the parking lot until approximately 2:15 in the afternoon when he observed the minivan exiting the parking lot. He then called over the police radio for marked police units to conduct a traffic stop to identify the driver and obtain more information. He further testified that he followed Cpls. Mormon’s and Garrett’s units to the location of the stop and observed the minivan speed away as they approached the minivan. He stated that he then turned on his lights and sirens and followed in the pursuit that took them through all of the major intersections in downtown Shreveport, across the Texas Street bridge and onto Traffic Street in a residential neighborhood until they reached the levee. Det. Gordon testified that he observed Defendant commit several traffic violations during the pursuit, i.e., stop sign violations, red light violations, traveling at high speeds and “blatant disregard for public safety,” and noted that he never observed the brake lights of the minivan come on. Det. Gordon further testified that he stopped his unit behind the stopped minivan, did a protective sweep of the vehicle and noted that there were no occupants | Jnside the minivan. A K9 unit arrived on the scene and the dog followed Defendant’s scent into the river, where the officers apprehended him in the water and brought him back to shore to be arrested.[8]
On January 16, 2013, a jury found Defendant, by a vote of 11 to 1, guilty as charged of aggravated flight from an officer.
On January 28, 2013, the state filed a fourth or subsequent felony habitual offender bill of information, alleging that Defendant had six felony convictions.
On March 27, 2013, a multiple offender hearing was held. The trial court found Defendant to be a fourth felony habitual offender and sentenced him to 25 years at hard labor without benefit of probation or suspension of sentence,[9] noting that this *541 sentence was a deviation from the mandatory term |fiof life imprisonment.[10] The trial court also denied a motion for new trial filed by Defendant.
On March 28, 2013, the state filed a motion to reconsider sentence, requesting that the trial court reconsider the 25-year sentence as it deviates from the statutorily mandated sentence for a fourth felony habitual offender of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
On May 29, 2013, Defendant filed a motion to reconsider sentence and requested that he be sentenced as follows: “2 years (must serve) suspend 25 years, 10 years probation, fine and community service 5,000 hours. Complete Cenikor Treatment Program.”
On July 15, 2013, a resentencing hearing was held, and the trial court resentenced Defendant to the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.[11]
Defendant appeals his conviction and sentence.

DISCUSSION

Sufficiency of the Evidence

In his first assignment of error, Defendant argues that the evidence presented at trial was insufficient to support the conviction of aggravated flight from an officer. He contends that the state failed to prove that the officers had reasonable grounds to believe that he had committed an offense at the time they conducted an investigatory stop of the vehicle he was driving. Defendant also argues that, although there was evidence that he failed to stop at red lights in Caddo Parish, there was no evidence that he ran a stop sign in Caddo Parish.
The state argues that the evidence presented at trial is sufficient to convict Defendant of aggravated flight from an officer. The state contends that Defendant may not challenge the validity of the investigatory stop because he fails to challenge on appeal the trial court’s denial of his motion to suppress.
The standard of appellate review for a sufficiency of the evidence claim is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the *542 essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Hearold, 603 So.2d 731 (La.1992); State v. Smith, 47,983 (La.App.2d Cir.5/15/13), 116 So.3d 884. See also La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). A reviewing court may not impinge on the fact finder’s discretion unless it is necessary to guarantee the fundamental due process of law. Id. The appellate court does not assess credibility or reweigh the evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
Thus, in order for Defendant’s convictions to be upheld, the record must establish that the state proved beyond a reasonable doubt all of the essential elements of aggravated flight from an officer. La. R.S. 14:108.1 defines aggravated flight from an officer as follows:
[[Image here]]
C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.
D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or | nwatercraft commits at least two of the following acts:
(1) Leaves the roadway or forces another vehicle to leave the roadway.
(2) Collides with another vehicle or watercraft.
(3) Exceeds the posted speed limit by at least twenty-five miles per hour.
(4) Travels against the flow of traffic or in the case of watercraft, operates the watercraft in a careless manner in violation of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99.
(5) Fails to obey a stop sign or a yield sign.
(6) Fails to obey a traffic control signal device.
Evidence of flight, concealment and attempt to avoid apprehension is relevant in the charge of aggravated flight from an officer. State v. Ashley, 33,880 (La.App.2d Cir.10/4/00), 768 So.2d 817, writ denied, 00-3122 (La.12/8/00), 776 So.2d 466; State v. Davies, 350 So.2d 586 (La.1977). Flight indicates consciousness of guilt and is a circumstance from which a jury may infer guilt. Ashley, supra, citing State v. Brown, 618 So.2d 629 (La.App. 2d Cir.1993), writ denied, 624 So.2d 1222 (La.1993).
In the case sub judice, Defendant intentionally refused to remain at the site of the initial stop and, instead, drove away *543 as the police officers approached his vehicle. The officers all testified that Defendant was given visual and audible signals, i.e., lights and sirens, by the police units to stop his vehicle before the investigatory stop and during the pursuit. Human life was endangered during the pursuit of Defendant because he failed to stop at several stop lights in downtown Shreveport at approximately 2:20 in the afternoon on a busy work day with both pedestrian and automobile traffic.[12] |inThe officers testified that they were concerned about other drivers in downtown Shreveport and feared that the pursuit of Defendant would lead to accidents due to Defendant’s speed and failure to stop at stop lights. The officers had reasonable grounds to believe that Defendant committed an offense because the vehicle he was driving matched the description of a vehicle that was involved in several recent burglaries, i.e., a tan-colored minivan with a missing front right hubcap.[13] Therefore, it was reasonable for the officers to believe that the driver of this vehicle committed the offense of burglary. Furthermore, Defendant’s flight from the officers indicates his consciousness of guilt and provided the officers with reasonable grounds to believe Defendant committed an offense.
Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the state presented sufficient evidence at trial to establish the essential elements of aggravated flight from an officer. We find, therefore, that this assignment of error lacks merit.

Excessive Sentence

In his second assignment of error, Defendant argues that his sentence is unconstitutionally excessive. He contends that the crime of aggravated flight from an officer carries a maximum sentence of two years’ imprisonment; and, therefore, the sentence of life imprisonment is grossly out of proportion to the severity of the crime.
InThe state argues that the trial court lawfully sentenced Defendant to mandatory life imprisonment pursuant to the habitual offender statute. The state contends that Defendant was properly adjudicated a fourth felony habitual offender because he had previously been convicted of attempted simple robbery, possession with intent to distribute hydrocodone and possession of cocaine. The state explains that attempted simple robbery and aggravated flight from an officer are both crimes of violence according to La. R.S. 14:2 and that possession with intent to distribute hydrocodone is punishable by up to 10 years at hard labor. The state also notes that Defendant has been arrested approximately 45 times for various drug offenses, crimes of violence and probation and parole violations.
La. R.S. 15:529.1(A)(4)(b) sets forth a mandatory sentence of life imprisonment for certain fourth felony habitual offenders, stating:
*544 If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B) ... or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
When reviewing an excessive sentence claim, the appellate court uses a two-prong test. First, the trial record must demonstrate that the trial court complied with La. C. Cr. P. art. 894.1. Second, the appellate court must determine if the sentence is constitutionally excessive. A sentence is excessive and violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 884 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. State v. Square, 433 So.2d 104 (La.1983); State v. Black, 28,100 (La.App.2d Cir.2/28/96), 669 So.2d 667, writ denied, 96-0836 (La.9/20/96), 679 So.2d 430.
Compliance with La. C. Cr. P. art. 894.1 is not mandated where the sentence is statutorily required. State v. Gay, 48,832 (La.App.2d Cir.2/26/14), 136 So.3d 919; State v. Wilson, 37,555 (La.App.2d Cir.11/6/03), 859 So.2d 957, writ denied, 03-3232 (La.6/4/04), 876 So.2d 73. The Louisiana Supreme Court has repeatedly held that mandatory life sentences for habitual offenders are generally not unconstitutional. Gay, supra. To rebut the presumption that the mandatory sentence is constitutional, the defendant must clearly and convincingly show that because of unusual or exceptional circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. Id.; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529, citing State v. Dorthey, 623 So.2d 1276 (La.1993), and State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672.
| ,sDefendant has not demonstrated that the mandatory sentence of life imprisonment is excessive considering the facts of this case. He has numerous previous felony convictions, including crimes of violence and drug offenses. Based on Defendant’s criminal record, he does not merit a downward departure from the mandatory sentence, and the statutorily imposed life sentence is constitutional.
Therefore, this assignment of error lacks merit.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant, Bobby Charles Byrd, are affirmed.
AFFIRMED.

. On cross-examination, Cpl. Garrett clarified that she stopped the minivan because Det. Gordon requested that the minivan be stopped, not because she observed the driver commit a traffic offense. In fact, she testified that Defendant had not committed a traffic offense at the time she stopped his vehicle.

. She testified that the pursuit was recorded by a camera in her unit that was activated when she turned on the unit’s lights and sirens. At this point in her testimony, the jury viewed the video recorded from Cpl. Garrett’s police unit.

. Cpl. Garrett explained that the video indicates when she applied the brakes of the unit and the speed at which she drove.

. On cross examination, Cpl. Garrett clarified that she did not use a radar gun to record Defendant’s speed.

. Traffic Street is located in Bossier Parish.

. This residential area is located in Bossier Parish.

. She noted that Cpl. Garrett was driving approximately 45 mph at this time and that Defendant was driving faster than Cpl. Garrett.

. At the close of the state's case, Defendant moved for a dismissal of the indictment and/or a directed verdict on his behalf, arguing that tire state had not proven all of the elements of the crime, specifically the element that the officer must have reasonable grounds to believe that the driver has committed an offense. The trial court denied these motions.

. The trial court explained:
Based on the criminal history of the defendant, the Court so sentences the defendant to serve 25 years at hard labor without benefit of probation or suspension of sentence based on the evidence adduced including the prior criminal history of attempted simple robbery from 2002, possession with intent to distribute CDS Schedule III, to wit, hydrocodone, and three counts of distribution of Schedule II, to wit, or namely, cocaine, the possession from August of ... 2006, along with the aggravated flight from an officer, the instant case for which the jury found the *541 defendant guilty. The three counts of distribution I counted as one, as those three guilty pleas were entered at the same time.

. The trial court explained its reasons for deviating from the mandatory sentence of life imprisonment, stating:
The reasons for the Court deviating would be because based on the criminal history that has been — to which Mr. Byrd has been adjudicated today, one is a crime of violence, but it was an attempted simple robbery. The others are drug offenses. Although they are numerous, for purposes of the habitual offender law, the three counts of distribution are counted as one for purposes of the fact that they were pled to at the same time and can’t be considered individually as far as the habitual offender law is concerned.

. The trial court noted:
The Court at that time found that the-under those circumstances, the mandatory sentence of life imprisonment was unconstitutionally excessive and gave the 25 years.
However, upon the Court’s review of the statute, the Court makes a finding that the defendant has not shown that he’s exceptional and should be sentenced to one sentence that is less than the mandatory life sentence. The fact that no such showing has been made, at this time the Court re-sentences Mr. Byrd and grants the state's motion and so sentences Mr. Byrd to a mandatory life sentence at hard labor.

. Testimony offered by the officers also suggests that Defendant was speeding, but they did not testify as to his exact speed. Further, the officers testified that Defendant did not stop at stop signs on Traffic Street, which is located in Bossier Parish. We note that Defendant’s failure to stop occurred in downtown Shreveport, Caddo Parish, and that the pursuit of Defendant began in Caddo Parish and continued across the Texas Street bridge into Bossier Parish.

. Defendant does not challenge on appeal the validity of the initial investigatory stop. Prior to trial, Defendant filed a motion to suppress and/or quash, arguing that the officers "had no probable cause to initiate a stop of the vehicle” operated by Defendant. The trial court denied this motion, and Defendant does not appeal the trial court’s ruling on this motion.